******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

ROBINSON, C. J., concurring in part and dissenting in part. I respectfully disagree with part III A of the majority opinion, in which the majority concludes that the police case/incident report (police report) created by the police department of the plaintiff Department of Mental Health and Addiction Services (DMHAS) does not fall within the definition of "communications and records," as used in the psychiatrist-patient privilege statute, General Statutes § 52-146e (a),[1] which would exempt it from disclosure under the Freedom of Information Act (FOIA), General Statutes § 1-200 et seq. Instead, guided by our recent decision in the "Arsenic and Old Lace" case, *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 318 Conn. 769, 771, 122 A.3d 1217 (2015), I conclude that the police report in the present case consists of written documentation by DMHAS police officers and oral statements made by staff members and responding officers at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting), arising out of and relating to a mental health incident that occurred during a patient's treatment, and is thus a "record" of such communications, as defined by General Statutes § 52-146d (2).[2] Unlike the majority, I would order the redaction of the deceased patient's psychiatric diagnosis, in addition to the names, addresses, and phone numbers of the two patients referenced in the police report. Because I nevertheless conclude that disclosure of the police report in redacted form is required by law pursuant to FOIA, I also conclude that it is not subject to the nondisclosure provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d et seq., as implemented by the Privacy Rule, 45 C.F.R. § 160.101 et seq. See General Statutes § 1-210 (a).[3] Accordingly, I respectfully dissent in part.

I note my agreement with the majority's recitation of the facts, procedural history, and governing legal principles, as set forth by, among other authorities, *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 769, and General Statutes § 1-2z. See parts I and II of the majority opinion. I also agree with the majority's conclusion that the phrase in § 52-146d (2), "wherever made, including communications and records which occur in or are prepared at a mental health facility," does *not* include *all* communications and records of communications created in a mental health facility, regardless of between whom they are made. See part III A 1 of the majority opinion. I write separately because I believe that our recent

interpretation of the term "communications and records" in *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 786–91 and n.8, is dispositive as to whether the police report in question falls within the ambit of § 52-146d (2). See, e.g., *State* v. *Lopez*, 341 Conn. 793, 802, 268 A.3d 67 (2022) ("[w]e have previously construed the meaning of the [statutory] phrase . . . and are guided by that precedent"); *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, 340 Conn. 115, 126, 263 A.3d 87 (2021) ("[i]n construing [the statute], we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute" (internal quotation marks omitted)).

At the outset, I emphasize that records produced by a state mental health institution's police department reflect a unique tension between two important interests, namely, the protection of patient privacy under the psychiatrist-patient privilege and ensuring government transparency under FOIA. On the one hand, the psychiatrist-patient privilege's purpose is to safeguard confidential communications and records of a patient seeking diagnosis and treatment to protect the therapeutic relationship. See, e.g., *State* v. *White*, 169 Conn. 223, 234–35, 363 A.2d 143 (principal purpose of privilege is to give patient incentive to make full disclosure to physician to obtain effective treatment free from embarrassment and invasion of privacy), cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975); see also *Falco* v. *Institute of Living*, 254 Conn. 321, 328–29, 757 A.2d 571 (2000) (protection of communications that identify patient is "central" to purpose of statute). On the other hand, the core legislative policy of FOIA is "one that favors the open conduct of government and free public access to government records." (Internal quotation marks omitted.) *Meriden* v. *Freedom of Information Commission*, 338 Conn. 310, 321, 258 A.3d 1 (2021); see, e.g., *Director, Retirement & Benefits Services Division* v. *Freedom of Information Commission*, 256 Conn. 764, 772–73, 775 A.2d 981 (2001) (court interprets exemptions to act narrowly considering "[the] overarching policy underlying [FOIA] favoring the disclosure of public records" (internal quotation marks omitted)). Thus, competing considerations between protecting patient confidentiality and favoring the disclosure of public records require us to apply the psychiatric-patient privilege "cautiously and with circumspection" to achieve the proper balance between the rights to personal privacy and to inspect government records. (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 724, 759 A.2d 995 (2000).

Our recent decision in the Arsenic and Old Lace case, *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 769, interpreted the

phrase in § 52-146d (2), " 'between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility,' " and concluded that the medical and dental records contained in a deceased patient's file fell within its purview. Id., 783. In that case, the Freedom of Information Commission (commission) argued that there was no distinction between documents related to psychiatric care and those related to medical treatment at a mental health facility for purposes of the psychiatrist-patient privilege. Id., 780. We agreed because "all of the documents at issue were created during care for a patient at an inpatient mental health facility . . . ." Id. We also deemed certain *administrative documents privileged* "because they contain[ed] identifying information and information related to [the patient's] diagnosis." Id., 789 n.8.

Additionally, we recognized that General Statutes § 17a-545, which requires inpatient mental health facilities to conduct physical examinations of patients, reflects a legislative judgment that "mental health conditions are often related to physical disorders and that the proper treatment of mental health involves the treatment of physical issues, as well." Id., 790–91. Although, as the majority points out, the definition of "communications and records" was not at issue in *Falco* v. *Institute of Living*, supra, 254 Conn. 321; see part III A 1 of the majority opinion; we nevertheless relied on that case for the proposition that the legislative purpose behind the psychiatrist-patient privilege recognizes " 'that a stigma may attach to one who seeks psychiatric care, and that revealing a patient's identity may subject [the individual] to embarrassment, harassment or discrimination.' " *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 787 n.8, quoting *Falco* v. *Institute of Living*, supra, 329. We likewise "refuse[d] to interpret the psychiatrist-patient privilege in such a manner so as to thwart mental health treatment in this state at a time when society is seeing the ever increasing need for individuals to seek out and receive mental health treatment." *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 786 n.8. Ultimately, this court's "understanding of the broad veil of secrecy created by the psychiatrist-patient privilege"; id., 791; supported our conclusion that, although not communications directly between a patient or family member and a *psychiatrist*, the medical and dental records in the Arsenic and Old Lace case satisfied the statutory definition of "communications and records" in § 52-146d (2) because there was evidence "that the medical and dental records at issue were created at the hospital

during [the patient's] inpatient treatment," were related to the objectives of the patient's diagnosis and treatment, and were made "under the direction of a psychiatrist," who was "the superintendent of the facility at the time [the patient]" was receiving treatment. Id., 785–86.

This court also has generally interpreted the psychiatrist-patient "privilege broadly and its exceptions narrowly." *State* v. *Fay*, 326 Conn. 742, 751, 167 A.3d 897 (2017); see *State* v. *Jenkins*, 73 Conn. App. 150, 162, 807 A.2d 485 (2002) (all information in nursing assessment conducted under supervision of psychiatrist, "*even the biographical data*, [was] used . . . to gather information about mental health issues" and, thus, was "a mental health record" (emphasis added; internal quotation marks omitted)), rev'd in part on other grounds, 271 Conn. 165, 856 A.2d 383 (2004). It is well established that "[t]he people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records . . . ." (Internal quotation marks omitted.) *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 784. This court repeatedly has recognized that the psychiatrist-patient "privilege covers not only communications between the patient and [the] psychiatrist, but also all communications relating to the patient's mental condition between the patient's family and the psychiatrist and his *staff and employees, as well as records and communications prepared at mental health facilities*." (Emphasis added; internal quotation marks omitted.) *State* v. *Kelly*, 208 Conn. 365, 379, 545 A.2d 1048 (1988); see *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 786 n.8; see also General Statutes § 52-146d (2).

Turning to the record in this case, I observe that it is undisputed that, although members of the DMHAS police department perform traditional law enforcement functions,[4] they are also specially trained to work with patients and mental health care providers at Whiting. See Public Safety Division, Dept. of Mental Health & Addiction Services, DMHAS Police, available at https://portal.ct.gov/DMHAS/Divisions/Safety-Services/DSS-Public-Safety-Police (last visited August 25, 2023). DMHAS police officers regularly interact with Whiting patients and are familiar with, among other things, their behaviors, reasons for admission to the facility, and psychiatric symptom triggers, as well as de-escalation techniques. The record indicates that DMHAS police officers may use that specialized training in connection with a police intervention at Whiting, and my own in camera review of the police report at issue reveals that DMHAS police officers, in responding to a "code" alarm activated at a nurse's station, acted in their capacity as part of the psychiatric treatment team, rather than in a purely law enforcement capacity. In fact, consistent with their role at DMHAS facilities, and unlike the responding nurses

and emergency medical personnel, no officer provided emergency medical treatment to the patient upon arrival. Moreover, Whiting's superintendent, with overall supervisory responsibility over operations at that facility, was a forensic psychiatrist at the time that the incident occurred and the record was created. See *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 785–86 (relying on fact that superintendent of inpatient facility during patient's treatment was psychiatrist in concluding that privilege extended to records pertaining purely to medical care).

Therefore, I conclude that the police report was created by the DMHAS police officers who acted in conjunction with and as part of the psychiatric treatment staff. I also conclude that the police report relates to the diagnosis or treatment of a patient's mental condition because it documents statements and writings that divulge the patient's diagnosis and the occurrence of a mental health incident during psychiatric treatment. Accordingly, because the police report in this case consists of written testimonials by DMHAS police officers documenting oral statements made by the hospital staff members, responding officers, and another patient, arising out of and relating to the mental health incident of a patient during treatment, I conclude that it is a "record" of such communications made between persons participating under the supervision of a psychiatric mental health provider pursuant to § 52-146d (2). The commission's determination otherwise is not supported by substantial evidence in the record and is a clear error of law.

Although we held in *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 769, that all medical and dental records, including administrative records, contained in a patient's file were privileged "communications and records"; see id., 786; see also id., 796 (*McDonald, J.*, concurring in part and dissenting in part); I emphasize that I do not believe that all police reports created by the DMHAS police department fall within the scope of § 52-146d (2). The broad veil of confidentiality the law recognizes by the psychiatrist-patient privilege, although intended to protect the privacy of patients undergoing psychiatric treatment, may well be used improperly to conceal alleged abuse and other physical and psychological harms in psychiatric institutions. See M. Shields et al., "Patient Safety in Inpatient Psychiatry: A Remaining Frontier for Health Policy," 37 Health Aff. 1853, 1853–54, 1858 (2018).

Because I conclude that the police report does not fall within the "communications and records" protected by the psychiatrist-patient privilege, I next reach the issue of whether a redacted version of the police report can be disclosed without violating the privilege, and, more specifically, whether the trial court had the

authority to order the disclosure of the police report with redactions pursuant to FOIA.

Pursuant to FOIA, all nonprivileged "records maintained or kept on file by any public agency . . . shall be public records . . . ." General Statutes § 1-210 (a); see footnote 3 of this opinion. Section 52-146e (a), however, provides in relevant part that "no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative." Although communications bearing "no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute and are" otherwise subject to disclosure, we have acknowledged that shielding the identity of psychiatric facility patients is "central to the purpose of the statute." (Internal quotation marks omitted.) *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 784. Thus, this court has agreed with the proposition that state agencies have discretion, under some circumstances, to redact information exempt from public disclosure when complying with FOIA. See *Pictometry International Corp.* v. *Freedom of Information Commission*, 307 Conn. 648, 663, 59 A.3d 172 (2013).

Section 52-146d (4) explains that communications and records " 'identify a patient' " when they contain "names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or . . . codes or numbers which are in general use outside of the mental health facility which prepared the communications and records . . . ." Information that identifies a patient includes, inter alia, names, last known addresses, social security numbers, and zip codes. See *Falco* v. *Institute of Living*, supra, 254 Conn. 323; *Connecticut State Medical Society* v. *Commission on Hospitals & Health Care*, 223 Conn. 450, 459, 612 A.2d 1217 (1992). Our case law instructs us to apply this framework objectively because "interpreting the psychiatrist-patient privilege in light of what the public may or may not know about the person or his or her medical history is a dangerous proposition not authorized by statute. As this court stated in *Falco* [v. *Institute of Living*, supra, 331], 'it is contrary to the language of the statute and the intent of the legislature for courts to make discretionary case-by-case determinations of when the privilege may be overridden.' " *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 789 n.8. Therefore, I look only to the four corners of the police report to determine whether it identifies a patient, rather than considering information therein in conjunction with other information already available to the pub-

lic.

My in camera review of the unredacted police report reveals that it contains, among other things, the patient's name, another patient's name, the patient's psychiatric condition, and the patient's physical condition at the time of the incident. It also includes descriptions of emergency medical care that was rendered to the patient by Whiting staff and other emergency medical providers. Although the majority concludes that, simply because the FOIA request "stat[ed] that '[a]ll references to the identity of a patient can be redacted,' " the patients' names, birthdates, and home phone numbers in the police report must be redacted; part III A 2 of the majority opinion; I would further direct that the patient's psychiatric diagnosis be redacted before the police report is disclosed. Considering the nature of this particular police report, the use of redactions to eliminate all references to the patient's name and other identifying information, including information relating to the patients' psychiatric diagnosis, not only appropriately balances patient confidentiality with the need for institutional transparency and the purposes of FOIA, but also complies with the de-identification procedure for disclosure under §§ 52-146d (4) and 52-146e (a).[5] See *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, supra, 318 Conn. 772–74 (trial court partially redacted two documents *as to patient's diagnosis* but incorrectly concluded that all other records at issue could be disclosed under § 52-146e); id., 789–90 n.8 (correspondence from hospital superintendent to insurance company detailing patient's *diagnosis, psychiatric treatment, and mental state* was privileged); cf. *Chalmers* v. *Ormond*, Docket No. FST-CV11-6007918-S, 2012 WL 1592191, *3 (Conn. Super. April 17, 2012) (although psychiatric records could be disclosed to counsel for parties pursuant to 42 C.F.R. § 2.64 (e), court instructed plaintiffs' counsel to redact references to patients' *mental, physical, and nutritional condition*).

Nevertheless, because I agree with the majority that disclosure of the police report in a redacted form is required by law under HIPAA, I agree that it must disclose a redacted report, albeit to a greater extent than that ordered by the majority. Because I would direct judgment ordering the commission to disclose the police report redacting the patient's psychiatric diagnosis, in addition to the names, birthdates, and phone numbers of the patients in the police report, in accordance with §§ 52-146d (4) and 52-146e (a), I respectfully dissent in part.

[1] General Statutes § 52-146e (a) provides: "All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized

representative.”

[2] General Statutes § 52-146d (2) provides: “ ‘Communications and records’ means all oral and written communications and records thereof relating to diagnosis or treatment of a patient’s mental condition between the patient and a psychiatric mental health provider, or between a member of the patient’s family and a psychiatric mental health provider, or between any of such persons and a person participating under the supervision of a psychiatric mental health provider in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility . . . .”

Although § 52-146d was the subject of technical amendments in 2019; see Public Acts 2019, No. 19-98, § 24; those amendments have no bearing on the merits of this appeal. I refer to the current revision of the statute in the interest of simplicity.

[3] General Statutes § 1-210 (a) provides in relevant part: “(a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. . . .”

[4] The DMHAS police department provides “quality services through traditional law enforcement functions and safety and security management activities which are critical to maintaining compliance required for the Joint Commission on Accreditation of Healthcare Organizations . . . and other regulatory entities . . . .” Public Safety Division, Dept. of Mental Health & Addiction Services, DMHAS Police, available at https://portal.ct.gov/DMHAS/ Divisions/Safety-Services/DSS--Public-Safety-Police (last visited August 25, 2023).

[5] I acknowledge that my conclusion with respect to redaction positions the records of patients receiving psychiatric care in public institutions somewhat differently from those receiving psychiatric care in private facilities. This differential treatment, however, is consistent with our understanding of the legislature’s intent as we navigate the tensions inherent in the conflicting relationship between §§ 1-210 and 52-146e (a). The trial court’s order that the redacted police report be disclosed is consistent with the plain language of the statutes and the legislature’s intent to “[allow] research and administration to proceed while safeguarding the confidentiality of the patient’s communications,” by facilitating the transparency in the operation of state government institutions that are subject to FOIA while ensuring that “identifiable psychiatric data” receive similar protection in both public and private institutions. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1969 Sess., p. 92, remarks of Ben Bursten, a psychiatrist; see id., remarks of Bursten (observing that § 52-146d (2) “represents a delicate balance between the patient’s rights and the advantages offered by the new [computerized data storage] technology”). I recognize this balance, cognizant of the legislative prerogative with respect to the formulation of public policy. See, e.g., *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, 342 Conn. 25, 42, 268 A.3d 630 (2022) (“we acknowledge that our analysis of the plain and unambiguous statutory text . . . may lead to a result that might well have been unintended by the legislature”); *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002) (“we are constrained to recognize the balance that the legislature has struck between the state’s dual interest in policing and eliminating sex discrimination in employment, on the one hand, and protecting small employers from the potentially heavy costs associated with defending against discrimination claims, on the other”).